UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH DARVIE,

                        Plaintiff,

                                              9:08-CV-0715
v.                                         (GLS/GHL)

M. COUNTRYMAN, Correctional Officer, Eastern C.F.;
K. SIMMONS, Correctional Lieutenant; Eastern C.F.;
J. COLEMAN, Correctional Captain, Eastern, C.F.;
P. HEALY, Deputy Superintendent of Security, Eastern C.F.;
WILLIAM. BROWN, Superintendent, Eastern C.F.;

                            Defendants.
_____

APPEARANCES:                             OF COUNSEL:

JOSEPH DARVIE, 94-A-0560
  Plaintiff, *Pro Se*
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

GEORGE H. LOWE, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

       This *pro se* prisoner civil rights action, commenced by Joseph Darvie ("Plaintiff")

pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable Gary L. Sharpe, United

States District Judge, to hear and determine all pretrial matters (of a non-dispositive nature) and

issue report-recommendations on all dispositive matters before the Court, pursuant to 28 U.S.C.

§ 636(b) and Local Rule 72.3(c).  Currently before the Court is Plaintiff's motion for leave to

proceed *in forma pauperis*.  (Dkt. No. 2.)  For the reasons discussed below, I deny Plaintiff's

motion without prejudice, and I recommend that the Court issue an Order *sua sponte* dismissing

his Complaint (pursuant to 28 U.S.C. §§ 1915[e][2][B][ii], 1915A and Fed. R. Civ. P. 12[h][3])

if he does not, within thirty (30) days of the date of the Court's final Order with respect to this

Report-Recommendation, do the following two things: (1) file with the Court a signed Amended

Complaint that corrects the pleading deficiencies described below in Part II.B. of this Report-

Recommendation; and (2) file a completed and signed copy of the *Northern District of New*

*York's* Inmate Authorization Form *and* its Application to Proceed Without the Full Prepayment

of Fees (including the "Certificate" portion of that Application).

I.      **SUMMARY OF PLAINTIFF'S COMPLAINT**

Construed with the extra leniency normally afforded to pleadings drafted by *pro se* civil

rights litigants, Plaintiff's Complaint alleges that, between November 29, 2005, and December 2,

2005, five employees of the New York State Department of Correctional Services ("Defendants")

violated his rights under the Eighth and Fourteenth Amendments in the following ways at

Eastern Correctional Facility ("Eastern C.F."): (1) they wrongfully refused to let Plaintiff use a

shower despite his possession of a valid medical excuse / permit authorizing him to use the

shower due to his affliction with multiple sclerosis; (2) they issued him a false misbehavior

report charging him with refusing a direct order and committing a movement violation; (3) they

wrongfully denied his request for a witness (a neurologist) at his resulting disciplinary hearing (at

which he was convicted of the disciplinary charge); (4) they wrongfully failed to rectify the

above-alleged misconduct after learning of it; and (5) they wrongfully caused him, through the

aforementioned actions, to be subjected to keep-lock confinement and the loss of all privileges

for a period of thirty (30) days (i.e., from November 29, 2005, to December 29, 2005).  (*See*

*generally* Dkt. No. 1 [Plf.'s Compl.].)

Among the other injuries Plaintiff alleges are the following: (1) intentionally causing him to be transferred from Eastern Correctional Facility to Clinton Correctional Facility (where he fell down several times); (2) causing the loss and/or destruction of various of his personal property during or after his prison transfer; (3) causing him to lose back pay from "Industry employment" due to his placement in keep-lock confinement; (4) causing him to spend funds to file an Article 78 proceeding in New York State Supreme Court; and (5) leaving a record of his disciplinary conviction in his "Inmate Assignment Program" File, which will adversely affect his chance of release on parole. (*Id*. at Parts III and V.) It should be noted that Plaintiff sues Defendants in both their individual and official capacities. (*Id*. at Part V.)

## II.   DISCUSSION

### A.   Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*

Plaintiff has signed an Inmate Authorization Form permitting DOCS to deduct (over time) the required filing fee of three-hundred-fifty-dollars from his prison trust fund account. (Dkt. No. 3.) However, that Inmate Authorization Form permits DOCS to disburse that amount to the U.S. District Court for the *Southern* District of New York (the Court from which this action has been transferred). (*Id*.) Plaintiff must sign an Inmate Authorization Form permitting DOCS to disburse that amount to the U.S. District Court for the *Northern District of New York*.

Furthermore, Plaintiff has submitted a Request to Proceed *In Forma Pauperis*. (Dkt. No. 2.) However, that Request (which was submitted on a form from the U.S. District Court for the Southern District of New York), does not contain a Certification from the appropriate official at Plaintiff's correctional facility with regard to the balance, and average balance, in any account in Plaintiff's name at the facility. (*Id*.) As a result, Plaintiff's Request does not satisfy this Court's

3

requirement that such information be provided in his Application to Proceed without the Full
Prepayment of Fees.  I decline to overlook this failure in light of Plaintiff's allegation of facts
indicating that there may be such an account in his name, specifically, his allegation that (1) he
once enjoyed the right to participate in prison programming which resulted in what he calls
"Industry employment," and (2) he suffers from multiple sclerosis, for which he may be receiving
public benefits.

For both of these reasons, I deny Plaintiff's motion to proceed *in forma pauperis* without
prejudice (i.e., with leave to renew).  In addition, since the defects in Plaintiff's motion would be
corrected if he completed and signed the Northern District of New York's Inmate Authorization
Form and Application to Proceed Without the Full Prepayment of Fees, I direct the Clerk's Office
to send him those two forms along with a copy of this Order.  Finally, I recommend that the
Court issue an Order dismissing Plaintiff's Complaint if, within thirty (30) days of the date of the
Court's final Order with respect to this Report-Recommendation, Plaintiff does not file a
completed and signed copy of (1) the *Northern District of New York's* Inmate Authorization
Form *and* (2) its Application to Proceed Without the Full Prepayment of Fees, including the
"Certificate" portion of that Application (unless he pays the Court's filing fee of three-hundred
fifty dollars).

### B.    Pleading Deficiencies in Plaintiff's Complaint

Setting aside the deficiencies in Plaintiff's motion for leave to proceed *in forma pauperis*,
I find that Plaintiff's Complaint is subject to *sua sponte* dismissal (pursuant to 28 U.S.C. §§
1915[e][2][B][ii], 1915A, and Fed. R. Civ. P. 12[h][3]) because there are four fatal problems
with Plaintiff's Complaint.

### 1.    Lack of Subject-Matter Jurisdiction Over Claims Against Defendants in Their Official Capacities

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

The Eleventh Amendment also bars a suit (including an action pursuant to 42 U.S.C. § 1983) against a state official acting in his *official* capacity. *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The Eleventh Amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity.").

This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . ." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *accord*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official

5

personally, for the real party in interest is the entity."); *Ying Jing Gan v. City of New York,* 996

F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his

official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to

invoke the Eleventh Amendment immunity belonging to the state.").

Here, Plaintiff has sued Defendants in both their individual and official capacities.  (Dkt.

No. 1, at Part V [Plf.'s Compl.].)  To the extent that he sues Defendants in their official

capacities, his claims must be dismissed.  *See McGinty v. State of New York*, 251 F.3d 84, 100

(2d Cir. 2001) ("Where it has been successfully demonstrated that a defendant is entitled to

sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter

jurisdiction over the case, and "the case must be stricken from the docket.") [citation omitted];

*see also* Fed. R. Civ. P. 12(h)(3).

For these reasons, I recommend that Plaintiff's claims against Defendants in their official

capacities be dismissed *with prejudice* as barred by the Eleventh Amendment.

### 2.    Failure to State an Inadequate-Prison-Conditions Claim Under the Eighth Amendment

"[A] prison official violates the Eighth Amendment only when two requirements are met.

First, the deprivation must be, objectively, 'sufficiently serious'. . . .   [Second,] a prison official

must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or

safety . . . ." *Farmer*, 511 U.S. at 834.  Generally, to prevail on a claim of inadequate prison

conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted

in deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate*

*indifference* to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994);

*Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

With respect to the first prong (i.e., the sufficiently serious nature of the deprivation), the

denial of a single shower to a prisoner does not violate the Eighth Amendment.[1]  Furthermore, to

the extent that Plaintiff is attempting to assert an Eighth Amendment claim based on the prison

conditions that he experienced following his disciplinary conviction (e.g., his keep-lock

confinement and prison transfer), Plaintiff does not allege facts plausibly suggesting that, taken

as a whole, those conditions were so severe as to deprive him of "the minimal civilized measure

of life's necessities," *Farmer*, 511 U.S. at 834, such as medical care, food, water, warmth or a

toilet.

With respect to the second prong (i.e., the mental state of the defendants), to the extent

that Plaintiff is attempting to assert an Eighth Amendment claim based on the prison conditions

to which he was subjected during and after his prison transfer (e.g., the falls that he sustained,

and property he lost, during or after his prison transfer, etc.), he fails to allege facts plausibly

suggesting that any Defendant in this action knew that he would experience those prison

---

[1]        *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 210-11 (N.D.N.Y. 2001) (Kahn, J.)
(holding denial of shower rights for one day does not violate the Eighth Amendment); *Chapple v.
Coughlin*, 92-CV-8629, 1996 U.S. Dist. LEXIS 12960, 1996 WL 507323, at *2 (S.D.N.Y. Sept.
5, 1996) (denial of shower and recreation for three days did not amount to an Eighth
Amendment violation); *see also Markiewicz v. Washington*, 175 F.3d 1020 (7th Cir. 1999) (holding that
prison official's refusal to allow a prisoner access to two showers did not state a claim of
unconstitutional prison conditions); *Cosby v. Purkett*, 782 F.Supp. 1324, 1329 (E.D.Mo.1992)
(holding that when a prisoner is allowed to shower once every seventy-two hours, the Eighth
Amendment is not violated); *cf. Hamilton v. Conway*, 03-CV-0527, 2008 U.S. Dist. LEXIS 6064,
at *26 (W.D.N.Y. 2008) ("Defendants' denial of a toothbrush and water for bathing to Plaintiff
for 48 hours is *de minimis* and fails to rise to the level of a constitutional violation because
briefly denying hygienic materials does not violate contemporary standards of decency.")
[citations omitted].

conditions, or even that he would be transferred as a result of their actions.  (*See* Dkt. No. 1

[Plf.'s Compl.].)  It must be remembered that "deliberate indifference describes a state of mind

more blameworthy than negligence."[2]  Rather, deliberate indifference is a state of mind akin to

*criminal recklessness*.[3]  Here, there are no facts alleged plausibly suggesting such recklessness.

For each of these alternative reasons, I recommend that the Court issue an Order *sua*

*sponte* dismissing Plaintiff's Eighth Amendment inadequate-prison-conditions claim unless,

within thirty (30) days of the date of the Court's final Order with regard to this Report-

Recommendation, he files an Amended Complaint that corrects the above-described deficiencies

in that claim (in addition to satisfying the condition described above in Part II.A. of this Order

and Report-Recommendation).  I note that, even construing Plaintiff's Complaint with the utmost

of special solicitude, I can find no allegations attempting to assert an Eighth Amendment

inadequate-medical-care claim.

---

[2]      *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference [for purposes of an Eighth
Amendment claim] describes a state of mind more blameworthy than negligence.").

[3]      *Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is
a familiar and workable standard that is consistent with the Cruel and Unusual Punishments
Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under
the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The
required state of mind [for a deliberate indifference claim under the Eighth Amendment],
equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk
to inmate health or safety; the official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists; and he must also draw the
inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d
550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of
criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL
2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433,
2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-
0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

### 3.   Failure to State a Procedural Due Process Claim
### Under the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch*, 494 U.S. 113, 125 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon*, 494 U.S. at 125 [internal quotations marks and citation omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*." *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id*. Here, I do not liberally construe Plaintiff's Complaint as attempting to assert anything other than a procedural due process claim under the Fourteenth Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl.].).

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a [protected] liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). With regard to the first question (i.e., whether the plaintiff enjoyed a protected liberty interest), the Supreme Court has held that liberty interests protected by the Fourteenth Amendment's Due Process Clause "will generally be limited to freedom from restraint which . . .

9

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandlin v. Connor*, 515 U.S. 472, 483-484 (1995).

Here, Plaintiff alleges that the result of the improperly conducted disciplinary hearing was the imposition of a disciplinary sentence of forty-four (44) days of keep-lock confinement, as well as a commensurate loss of privileges. (Dkt. No. 1, at 36 [Plf.'s Compl., attaching Paragraph 25 of his Article 78 proceeding, alleging referenced fact]; Dkt. No. 1, at 83-84 [Plf.'s Compl., attaching "Disciplinary Hearing Disposition," indicating referenced fact].) However, he has also alleged facts plausibly suggesting that he served only thirty (30) days of that keep-lock sentence (i.e., from November 29, 2005, to December 29, 2005). (Dkt. No. 1, at 36 [Plf.'s Compl., attaching Paragraph 25 of his Article 78 proceeding, alleging referenced fact]; *see also* Dkt. No. 1, at 44 [Plf.'s Compl., attaching "Disciplinary Incident Summary," indicating referenced fact].) Moreover, conspicuously missing from Plaintiff's detailed Complaint are any allegations that, while in keep-lock confinement, he was denied food, clothing, bedding, heat, running water, showers, toiletries, medicine, visitors, books, an opportunity to exercise, etc. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) In other words, it appears that the conditions of his keep-lock confinement were the ordinary conditions of keep-lock confinement in New York State correctional facilities. Under the circumstances, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.[4]

---

[4]     I note that numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in Special Housing Units (the conditions in which are ordinarily more restrictive than are the conditions in keep-lock confinement) of far more than thirty (30) days, even where the conditions of confinement in the Special Housing Units were, to varying degrees, more

With regard to Plaintiff's allegations of being issued a false misbehavior report, I note that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."[5]   In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."[6]  The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more adverse action such as "retaliation against the prisoner for exercising a constitutional right."[7]

Finally, with regard to Plaintiff's allegations of being wrongfully transferred to another

---

restrictive than those in the prison's general population.  *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr. 17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan*, 990 F. Supp. 214, 217-19 (W.D.N.Y. 1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin*, 985 F. Supp. 350, 353-56 (W.D.N.Y. 1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin*, 949 F. Supp. 112, 116-17 (N.D.N.Y. 1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero*, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

[5]     *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]); *accord, Pittman v. Forte*, 01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.).

[6]     *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).

[7]     *Boddie*, 105 F.3d at 862; *accord, Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

11

correctional facility, I note that a prisoner has no due process right to not be transferred to another prison.[8]  Granted, a prisoner has a First Amendment right to not be transferred in retaliation for exercising a constitutional right; however, here, Plaintiff has not alleged any facts plausibly (or even conclusorily) suggesting that such retaliation occurred.[9]

For these reasons, I recommend that the Court issue an Order *sua sponte* dismissing Plaintiff's Fourteenth Amendment procedural due process claim unless, within thirty (30) days of the date of the Court's final Order with regard to this Report-Recommendation, he files an Amended Complaint that corrects the above-described deficiencies in that claim (in addition to satisfying the condition described above in Part II.A. of this Order and Report-Recommendation).

---

[8]     *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976) ("The initial inquiry is whether the transfer of respondents from Norfolk [Correctional Institution] to Walpole [Correctional Institution] and Bridgewater [Correctional Institution] infringed or implicated a 'liberty' interest of respondents within the meaning of the Due Process Clause.  Contrary to the Court of Appeals, we hold that it did not."), *accord, Montayne v. Haymes*, 427 U.S. 236, 241-242 & n.4 (1976) (reversing Second Circuit decision cited by Plaintiff on page 12 of his memorandum of law); *Meriwether v. Coughlin*, 879 F.2d 1037, 1047 (2d Cir.1989) ("It is well established that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause."), *accord, Burke v. McCoy*, 96-CV-0984, 1997 WL 610650, at *5 (N.D.N.Y. Oct. 1, 1997) (Pooler, J.); *Kalwasinski v. Morse*, 96-CV-6475, 2005 WL 318817, at *1 (W.D.N.Y. Feb. 9, 2005); *Dunley v. Rodwell*, 01-CV-2007, 2004 WL 2106595, at *5 (D. Conn. Sept. 17, 2004); *Majid v. Malone*, 95-CV-2545, 1996 WL 134756, at *4 (S.D.N.Y. March 26, 1996); *see also Murphy v. Bradley*, 03-CV-714, 2004 U.S. Dist. LEXIS 1074, at *6-7 (D. Conn. Jan. 16, 2004) ("A prisoner has no constitutional right to be incarcerated in a particular institution; he may be transferred for any reason or for no reason at all"–even where conditions in one prison are "more disagreeable" or the prison has "more severe rules.").

[9]     *Majid v. Malone*, 95-CV-2545, 1996 WL 134756, at *4 (S.D.N.Y. March 26, 1996) (reaching same conclusion); *see also, infra*, Part IV.C.4. (discussing elements of First Amendment retaliation claim).

### 4.        Failure to State an Equal Protection Claim
### Under the Fourteenth Amendment

To state a claim for a violation of the Equal Protection Clause, a plaintiff must allege

facts plausibly suggesting that he was intentionally treated differently from others similarly

situated as a result of intentional or purposeful discrimination directed at an identifiable or

suspect class.  *Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at

*11 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted*, 96-CV-0759, Decision and Order

(N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).  Where the alleged classification involves a

"suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny

 by a court.  *Travis*, 1998 U.S. Dist. LEXIS 23417, at *11.[10]  In other circumstances, the alleged

classification is subject to only "rational basis scrutiny."  *Travis*, 1998 U.S. Dist. LEXIS 23417,

at *11-12.  To survive such scrutiny, the alleged classification need only be "rationally related" to

a "legitimate state interest."  *Id.*; *Holley*, 2007 U.S. Dist. LEXIS 64699, at *23; *Coleman*, 363 F.

Supp.2d at 902.

Here, Plaintiff has not alleged facts plausibly suggesting there has been any *classification*

at all in this case, i.e., that he was intentionally treated differently from others similarly situated

because of his multiple sclerosis condition.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  To the

contrary, the crux of his claim appears to be that he was *not* treated differently because of his

---

[10]        It should be noted that prisoners do not comprise a suspect or quasi-suspect class
for Equal Protection purposes.  *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)
("[N]either prisoners nor indigents are [members of a] suspect class . . . .") [citations omitted];
*Holley v. Carey*, 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23 (E.D. Cal. Aug. 31, 2007)
("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened
scrutiny.") [citations omitted]; *Coleman v. Martin*, 363 F. Supp.2d 894, 902 (E.D. Mich. 2005)
("Prisoners are not members of a protected class . . . .") [citation omitted].

multiple sclerosis condition.  (*Id*.)  In any event, even if he had alleged such facts, I would have difficulty finding that he has alleged facts plausibly suggesting that the alleged discrimination he experienced was not rationally related to a legitimate state interest (for example, requiring inmates to obey direct orders from correctional officers regarding movement in order to preserve security in a maximum-security correctional facility, or placing reasonable restrictions on the calling of witnesses during disciplinary hearings based on the materiality of the testimony and the witnesses' work schedules).

Moreover, I note that Plaintiff has alleged no facts plausibly suggesting that he suffered any physical injury as a result of the denial of the shower or the disciplinary conviction.[11]  I note also that, to the extent Plaintiff is trying to allege an Equal Protection violation based on a "physical injury" that was essentially *emotional* in nature (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.), such a claim would appear barred also by the Prison Litigation Reform Act of 1995 ("PLRA").  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Todd v. Graves*, 217 F. Supp.2d 958, 961-62 (S.D. Iowa 2002) (applying 42 U.S.C. § 1997e[e] to prisoner's Equal Protection claim under Fourteenth Amendment).[12]

---

[11]    *See Brown v. Croce,* 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (use of racial slurs and epithets accompanied by two slaps in face with no physical injury did not amount to constitutional violation, as a matter of law) [citations omitted].

[12]    I note that numerous courts have held–correctly, I believe–that physical manifestations of emotional injuries are not "physical injuries" for purposes of the PLRA.  *See*, *e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (weight loss, appetite

For these reasons, I recommend that the Court issue an Order *sua sponte* dismissing

Plaintiff's Fourteenth Amendment Equal Protection claim unless, within thirty (30) days of the

date of the Court's final Order with regard to this Report-Recommendation, he files an Amended

Complaint that corrects the above-described deficiencies in that claim (in addition to satisfying

the condition described above in Part II.A. of this Order and Report-Recommendation).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED**

without prejudice; and it is further

**RECOMMENDED** that the Court issue an Order *sua sponte* **DISMISSING** Plaintiff's

---

loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA);
*Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007)
("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional
distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].")
[internal quotation marks]; *Johnson v. Georgia*, 06-CV-0049, 2007 WL 2684985, at *3 (M.D.
Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA);
*Brown v. Porter*, 01-CV-20957, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006) (migraines,
dry mouth, and loss of appetite caused by mental health problems not "physical injury" for
purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.*, 05-CV-1142, 2006 WL 3408176, at *4
(M.D. Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating
spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams*, 03-CV-
0192, 2005 WL 5993338, at *4 (N.D. Fla. Oct. 14, 2005) (thirty-minute episode of
hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and
headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder*, 245 F. Supp.2d
200, 203, 205 (D. Me. 2003) ("permanent traumatization" not "physical injury" for purposes of
PLRA); *Todd v. Graves*, 217 F. Supp.2d 958, 960 (S.D. Iowa 2002) (stress, hypertension,
insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra
v. Virginia*, 112 F. Supp.2d 559, 566 (W.D. Va. 2000) (psychosomatic conditions, including
sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA);
*McGrath v. Johnson*, 67 F. Supp.2d 499, 508 (E.D. Pa. 1999) (inflamation of pre-existing skin
condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v.
Virgina*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and painful headaches
caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v.
DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D. Ill. March 31, 1997) (severe headaches
caused by emotional distress  not "physical injury" for purposes of PLRA).

Complaint (Dkt. No. 1), pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and Fed. R. Civ. P.

12(h)(3), if he does not, within **THIRTY (30) DAYS** of the date of the Court's final Order with

respect to this Report-Recommendation, do BOTH of the following TWO things:

> (1) File an Amended Complaint that corrects the pleading deficiencies described
>
> above in Part II.B of this Order and Report-Recommendation; *AND*
>
> (2) File a completed and signed copy of the *Northern District of New York's*
>
> Inmate Authorization Form *and* a completed and signed copy of the *Northern*
>
> *District of New York's* Application to Proceed Without the Full Prepayment of
>
> Fees including the "Certificate" portion of that Application (or pay the Court's
>
> filing fee of three hundred fifty dollars); and it is further

**ORDERED** that the Clerk's Office shall serve on Plaintiff a copy of the Northern District

of New York's Inmate Authorization Form and a copy of its Application to Proceed Without the

Full Prepayment of Fees, along with a copy of this Order and Report-Recommendation.

**BE ADVISED that any objections to this Report-Recommendation must be filed**

**with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3)**

**CALENDAR DAYS from the date of this Report-Recommendation**. *See* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y.L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ALSO ADVISED that the District Court, on *de novo* review, will ordinarily**

**refuse to consider arguments, case law and/or evidentiary material that could have been,**

**but was not, presented to the Magistrate Judge in the first instance**.[13]

---

[13]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)
("In objecting to a magistrate's report before the district court, a party has no right to present
further testimony when it offers no justification for not offering the testimony at the hearing

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: July 10, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18, n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].