UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————————

JOSEPH DARVIE,

                              Plaintiff,

                                                              9:08-CV-0715
v.                                                            (GLS/GHL)

M. COUNTRYMAN, Correctional Officer, Eastern C.F.;
K. SIMMONS, Correctional Lieutenant; Eastern C.F.;
J. COLEMAN, Correctional Captain, Eastern, C.F.;
P. HEALY, Deputy Superintendent of Security, Eastern C.F.;
WILLIAM. BROWN, Superintendent, Eastern C.F.;

                              Defendants.

———————————————————————————

APPEARANCES:                                                  OF COUNSEL:

JOSEPH DARVIE, 94-A-0560
   Plaintiff, *Pro Se*
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

GEORGE H. LOWE, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

       This *pro se* prisoner civil rights action, commenced by Joseph Darvie ("Plaintiff")

pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act of 1990, 42

U.S.C. §§ 12131 *et seq*., has been referred to me by the Honorable Gary L. Sharpe, United States

District Judge, to hear and determine all pretrial matters (of a non-dispositive nature) and issue

report-recommendations on all dispositive matters before the Court, pursuant to 28 U.S.C. §

636(b) and Local Rule 72.3(c).  Currently before the Court are (1) Plaintiff's *second* motion to

proceed *in forma pauperis*, (2) his Amended Complaint (attempting to correct the pleading

deficiencies identified in my Report-Recommendation of July 10, 2008), and (3) his motion for the appointment of counsel. (Dkt. Nos. 9, 10, 11, 12.)  For the reasons discussed below, I grant Plaintiff's second motion to proceed *in forma pauperis*, and I deny without prejudice his motion for the appointment of counsel.  I also recommend that the Court *sua sponte* dismiss the following parts of Plaintiff's Amended Complaint: (1) his claim for inadequate prison conditions under the Eighth Amendment; (2) his claim for inadequate medical care under the Eighth Amendment; and (3) his procedural due process claim under the Fourteenth Amendment.

## I.    PLAINTIFF'S SECOND MOTION TO PROCEED *IN FORMA PAUPERIS*

In his second motion to proceed *in forma pauperis*, Plaintiff has corrected the deficiencies identified in his first such motion.  (*See* Dkt. No. 6, at 3-4 [Report-Recommendation]; *compare* Dkt. Nos. 2-3 [Plf.'s First Motion] *with* Dkt. Nos. 10, 11 [Plf.'s Second Motion].)  Accordingly, Plaintiff's *in forma pauperis* application (Dkt. No. 2) is granted.[1]

## II.   PLAINTIFF'S AMENDED COMPLAINT

### A.    Summary of Plaintiff's Amended Complaint

The filing of Plaintiff's Amended Complaint renders his original Complaint a nullity.  *See* N.D.N.Y. L.R. 7.1(a)(4) ("[A] proposed amended pleading . . . will supersede the original pleading in all respects.");  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") [citations omitted], *cert. denied*, 434 U.S. 1014 (1978); *accord*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Dluhos v. Floating and Abandoned*

---

[1]    Plaintiff is advised that, although his motion to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

*Vessel*, 162 F.3d 63, 68 (2d Cir. 1998).[2]

Construed with the extra leniency normally afforded to pleadings drafted by *pro se* civil rights litigants, Plaintiff's Amended Complaint alleges that, between November 16, 2005, and December 2, 2005, at Eastern Correctional Facility ("Eastern C.F."), five employees of the New York State Department of Correctional Services ("Defendants") violated (1) his right against cruel-and-unusual prison conditions under the Eighth Amendment, (2) his right against inadequate-medical care under the Eighth Amendment, (3) his right to procedural due process under the Fourteenth Amendment, (4) his right to equal protection under the law, under the Fourteenth Amendment, and (5) his rights under the Americans with Disabilities Act.[3]  More specifically, Plaintiff alleges that Defendants violated these rights in the following nine ways:

(1) On November 29, 2005, Defendant Countryman wrongfully refused to let Plaintiff use a "block shower" despite knowing of his possession of a "permit from the medical department" authorizing him to use that shower due to his affliction with multiple sclerosis;[4]

(2) On November 29, 2005, Defendant Countryman knowingly issued Plaintiff a false misbehavior report charging him with refusing a direct order and committing a movement violation;[5]

---

[2]      *See also Lomnicki v. Cardinal McCloskey Servs.*, 04-CV-4548, 2007 WL 2176059, at *6 (S.D.N.Y. July 26, 2007) ("[T]he filing of the Second Amended Complaint makes the initial complaint a nullity . . . .")

[3]      (Dkt. No. 9, ¶¶ 3, 4, 5, 7, 9, 10, 11, 14, 15, 21, 22 [Plf.'s Am. Compl.].)

[4]      (Dkt. No. 9, ¶¶ 2, 3, 8, 11 [Plf.'s Am. Compl.].)

[5]      (Dkt. No. 9, ¶¶ 2, 5, 10, 22 [Plf.'s Am. Compl.]; *see also id.* at ¶ 2 [incorporating by reference "Appendix E" from Plaintiff's prior Article 78 proceeding, which shows that the misbehavior report against Plaintiff was signed by Defendant Countryman on November 29,

(3) On December 2, 2005, at the disciplinary hearing on the aforementioned misbehavior report, Defendant Simmons wrongfully "allotted [only] fourteen (14) minutes total time for [Plaintiff to defend himself] at the hearing," wrongfully disregarded documentary evidence adduced by Plaintiff during the hearing, and wrongfully denied Plaintiff's request for a witness (a neurologist) on the purported ground that the "[w]itness was not present at [the] time of the incident";[6]

(4) Between November 16, 2005, and December 7, 2005, Defendants Brown, Coleman and Healy wrongfully failed to prevent or rectify the above-alleged misconduct after being informed of it;[7]

(5) On December 2, 2005, Defendants wrongfully caused Plaintiff, through the aforementioned misconduct, to be convicted of the two referenced disciplinary charges (i.e., refusing a direct order and committing a movement violation), and to be sentenced to forty-four (44) days of keep-lock confinement and the loss of all privileges–which sentence was modified to thirty (30) days on December 28, 2005, by a correctional officer at another correctional facility;[8]

---

2005, *see* Dkt. No. 1, at 78, attaching "Appendix E"].)

[6]        (Dkt. No. 9, ¶¶ 2, 5, 9, 10 [Plf.'s Am. Compl.]; *see also id.* at ¶¶ 2, 4, 6 [incorporating by reference Petition, "Appendix I," "Appendix J," and "Appendix K" from Plaintiff's prior Article 78 proceeding, which show that the errors alleged to have been committed at Plaintiff's disciplinary hearing were allegedly committed by Defendant Simmons, *see* Dkt. No. 1, at 34, 83-85, attaching "Appendix I" and "Appendix K"].)

[7]        (Dkt. No. 9, ¶ 2 [Plf.'s Am. Compl., alleging facts in question, and incorporating by reference "Appendix G" and "Appendix J" from Plaintiff's prior Article 78 proceeding, which show Plaintiff's attempts to communicate with, or communications with, Defendants Brown, Coleman and Healy, *see* Dkt. No. 1, at 80, 81, 84, attaching "Appendix G" and "Appendix J"].)

[8]        (Dkt. No. 9, ¶¶ 4, 6 [Plf.'s Am. Compl., alleging that Plaintiff was originally sentenced to forty-four days of keeplock confinement and loss of privileges, but that the sentence

4

(6) By causing him to be wrongfully convicted of the referenced disciplinary charges, Defendants caused Plaintiff to lose the ability to "participate in [prison] programs to [obtain] a [reasonable] chance at parole";[9]

(7) On or about December 16, 2005, Defendants wrongfully "abused [the prison's] disciplinary procedures" by knowingly using those procedures to cause him to be transferred from Eastern C.F. to Clinton Correctional Facility ("Clinton C.F.") because he "could not walk fast enough or well enough to defendant's satisfaction";[10]

(8) During an unspecified time period, Defendants "procrastinate[d] [for more than one year] in approving treatments [and proper medical examinations] that [would have been beneficial to Plaintiff, specifically his referral to a neurologist], stating that such treatments are not FDA approved;"[11] and

(9) Over a 15-month time span at Eastern C.F., Defendants caused 11 misbehavior reports to be filed against Plaintiff because of his disability.[12]

It should be noted that Plaintiff appears to sue Defendants not simply in their individual

---

was "quickly modified," upon his transfer to Clinton C.F., to a sentence of thirty days of keeplock confinement and loss of privileges]; *see also id.* [incorporating by reference "Appendix I" and "Appendix K" from Plaintiff's prior Article 78 proceeding, which show that Plaintiff's forty-four day sentence was modified to thirty days on December 28, 2005, *see* Dkt. No. 1, at 83, 85, attaching "Appendix I" and "Appendix K"].)

[9]    (Dkt. No. 9, ¶¶ 4, 8, 11, 12 [Plf.'s Am. Compl.].)

[10]   (Dkt. No. 9, ¶¶ 2, 5, 10 [Plf.'s Am. Compl., alleging facts referenced, and incorporating by reference documents reflecting date of prison transfer, *see also* Dkt. No. 1, at 22, 36, attaching those documents].)

[11]   (Dkt. No. 9, ¶ 3 [Plf.'s Am. Compl.].)

[12]   (Dkt. No. 9, ¶ 22 [Plf.'s Am. Compl.].)

or personal capacities but in their official capacities.[13]

### B. Recently Clarified Legal Standard Governing Dismissals under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). It has long been understood that such a dismissal may be based on either or both of two grounds: (1) the "[in]sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2);[14] or (2) the fact that the claim is not cognizable.[15]

---

[13]     (Dkt. No. 9, ¶ 14 [Plf.'s Am. Compl.].)

[14]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[15]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[16] The purpose of this rule is to "facilitate a proper decision on the merits."[17] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[18]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

---

legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[16]        *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[17]        *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[18]        *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

requirements that exceed this liberal requirement.[19]   However, it is well established that even this

liberal notice pleading standard "has its limits."[20]   As a result, several Supreme Court decisions,

and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice

pleading standard.[21]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim

upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

---

[19]      *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s
simplified pleading standard applies to all civil actions, with limited exceptions [including]
averments of fraud or mistake.").

[20]      2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[21]      *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007)
(pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125
S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings,
Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-
209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the
Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park
Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)
(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule
8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the
U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued
precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit
interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on
summary affirmances because "they clearly acknowledge the continued precedential effect" of
*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[22]  Rather than turning

on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the

"plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a

plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to

relief above the speculative level [to a plausible level]" assuming, of course, that all the

allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a

practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other

words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of

[actionable conduct]."  *Id*.

Of course, the Second Circuit has repeatedly recognized the controlling nature of the

clarified plausibility standard that was articulated by the Supreme Court in *Twombly*.  *See Iqbal*

*v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell*

*Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim *plausible*.") [emphasis in original]; *In re Elevator*

*Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) ("We affirm the district court's dismissal of

the conspiracy claims because plaintiffs are unable to allege facts that would provide 'plausible

grounds to infer an agreement' [under *Bell Atlantic v. Twombly*]"); *cf. Goldstein v. Pataki*, 07-

---

[22]     The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Twombly*, 127 S. Ct. at 1969.

CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) ("*Twombly* requires . . .

that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative

level . . . .'") [internal citation omitted].

I note that Fed. R. Civ. P. 8's plausibly standard, explained in *Twombly*, was in no way

diminished by the Supreme Court's subsequent decision in *Erickson v. Pardus*, 127 S. Ct. 2197

(2007).  In *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint

because, although the complaint was otherwise factually specific as to how the prisoner's hepatis

C medication had been wrongfully terminated by prison officials for a period of approximately

18 months, the complaint failed to allege facts plausibly suggesting that the termination caused

the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded

the case because (1) under Fed. R. Civ. P. 8 and *Twombly*, all that is required is a "a short and

plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the

grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis

C medication for 18 months was "endangering [his] life" and that he was "still in need of

treatment for [the] disease."  *Id*. at 2200.  While *Erickson* does not elaborate much further on its

rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point

that is perhaps so obvious that it did not deserve mentioning in the short decision: a claim of

deliberate indifference to a serious medical need under the Eighth Amendment involves two

elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and

the existence of a deliberately indifferent mental state possessed by prison officials with regard to

that sufficiently serious medical need.  The *Erickson* decision had to do with only the first

element, not the second element.  *Id*. at 2199-2200.  The decision was implicitly recognizing that

an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in

and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious

medical need; the plaintiff need not also allege that he suffered an independent and "substantial

injury" as a result of the termination of his hepatis C medication.  *Id*.  This point of law is hardly

a novel one.[23]  Thus, the plausibility standard still governs the Court's analysis of the pleading

sufficiency of Plaintiff's claims.

Having said all of that, it should be emphasized that, "[i]n reviewing a complaint for

dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor."[24]  "This standard

is applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se*."[25]  In other words, while all pleadings are to be construed

liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.  For

example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to

consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively

---

[23]  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[24]  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[25]  *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

11

amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[26]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[27]  Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[28]  (Of course, granting a *pro se* plaintiff an opportunity to amend is not required where, as here, the plaintiff has already been given a chance to amend his pleading.)[29]

---

[26]      "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[27]      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[28]      *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[29]      *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[30]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[31]

### C.   Pleading Deficiencies in Plaintiff's Amended Complaint

As a I found with regard to the entirety of Plaintiff's original Complaint, I find that certain claims asserted in Plaintiff's Amended Complaint are subject to *sua sponte* dismissal (pursuant to

_____

1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[30]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[31]      *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

28 U.S.C. §§ 1915[e][2][B][ii], 1915A) because there are fatal problems with those claims.

### 1.   Failure to State an Inadequate-Prison-Conditions Claim Under the Eighth Amendment

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'. . . .   [Second,] a prison official must have a 'sufficiently culpable state of mind.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety . . . ."  *Farmer*, 511 U.S. at 834.  Generally, to prevail on a claim of inadequate prison conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

With respect to the first prong (i.e., the sufficiently serious nature of the deprivation), the denial of a single shower to a prisoner (for whatever reason) does not violate the Eighth Amendment.[32]  Furthermore, to the extent that Plaintiff is attempting to assert an Eighth

---

[32]     *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 210-11 (N.D.N.Y. 2001) (Kahn, J.) (holding denial of shower rights for one day does not violate the Eighth Amendment); *Chapple v. Coughlin*, 92-CV-8629, 1996 U.S. Dist. LEXIS 12960, 1996 WL 507323, at *2 (S.D.N.Y. Sept. 5, 1996) (denial of shower and recreation for three days did not amount to an Eighth Amendment violation); *see also Markiewicz v. Washington*, 175 F.3d 1020 (7th Cir. 1999) (holding that prison official's refusal to allow a prisoner access to two showers did not state a claim of unconstitutional prison conditions); *Cosby v. Purkett*, 782 F.Supp. 1324, 1329 (E.D.Mo.1992) (holding that when a prisoner is allowed to shower once every seventy-two hours, the Eighth Amendment is not violated); *cf. Hamilton v. Conway*, 03-CV-0527, 2008 U.S. Dist. LEXIS 6064, at *26 (W.D.N.Y. 2008) ("Defendants' denial of a toothbrush and water for bathing to Plaintiff for 48 hours is *de minimis* and fails to rise to the level of a constitutional violation because briefly denying hygienic materials does not violate contemporary standards of decency.") [citations omitted].

Amendment claim based on the prison conditions that he experienced following his disciplinary conviction (e.g., his keep-lock confinement and prison transfer), Plaintiff does not allege facts plausibly suggesting that, taken as a whole, those conditions were so severe as to deprive him of "the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, such as medical care, food, water, warmth or a toilet.

With respect to the second prong (i.e., the mental state of the defendants), to the extent that Plaintiff is attempting to assert an Eighth Amendment claim based on the prison conditions to which he was subjected during and after his prison transfer (e.g., the falls that he sustained, and property he lost, during or after his prison transfer, etc.), he fails to allege facts plausibly suggesting that any Defendant in this action knew that he would experience those prison conditions, or even that he would be transferred as a result of their actions.  (*See* Dkt. No. 1 [Plf.'s Compl.].)  It must be remembered that "deliberate indifference describes a state of mind more blameworthy than negligence."[33]  Rather, deliberate indifference is a state of mind akin to *criminal recklessness*.[34]  Here, there are no facts alleged plausibly suggesting such recklessness.

_____

[33]    *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence.").

[34]    *Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433,

15

For both of these two alternative reasons, I recommend that the Court issue an Order *sua sponte* dismissing the Eighth Amendment inadequate-prison-conditions claim asserted in Plaintiff's Amended Complaint.

> **2.    Failure to State an Inadequate-Medical-Care Claim
>          Under the Eighth Amendment**

Generally, to prevail on a claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Here, Plaintiff alleges that, during the time in question, he suffered from multiple sclerosis.  (Dkt. No. 9, ¶¶ 3, 8 [Plf.'s Am. Compl.].)  For the sake of brevity, I will assume that Plaintiff has alleged facts plausibly suggesting that he had a *sufficiently serious* medical need.

Rather, the problem with Plaintiff's claim (at least from his perspective) is that he has failed to allege facts plausibly suggesting that any of the five Defendants in this action was *deliberately indifferent* to that serious medical need.  As explained above in Part II.C.1. of this Report-Recommendation, deliberate indifference describes a state of mind more blameworthy

---

2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

than negligence; deliberate indifference is a state of mind akin to *criminal recklessness*.  Here,
Plaintiff's inadequate-medical-care claim alleges that, during an unspecified time period,
Defendants "procrastinate[d] [for more than one year] in approving treatments [and proper
medical examinations] that [would have been beneficial to Plaintiff, specifically his referral to a
neurologist], stating that such treatments are not FDA approved."[35]

For the sake of argument, I will assume that this year-long delay occurred within the
three-year statute-of-limitations period–even though Plaintiff appears to allege that the delay
occurred more than three years ago, and that he is relying on the "continuing violation doctrine."
(Dkt. No. 9, ¶ 3 [Plf.'s Am. Compl.].)  I will also assume that the facts alleged plausibly suggest
that the delay in approving a referral to a nuerologist was reckless–although this is far from
certain, in my mind.  (*Id.*)

However, I cannot imagine how any Defendant could possibly have caused such a delay
in referring Plaintiff to a neurologist given that (1) none of them are alleged to be medical care
providers but correctional officers or supervisors of correctional officers, and (2) Plaintiff alleges
no facts plausibly suggesting that they played any role whatsoever in the decision not to refer
Plaintiff to a neurologist.[36]  Indeed, to the contrary, Plaintiff appears to allege that it was a third-
party, a "Dr. Forte" (now deceased) who was responsible for that delay.[37]

I note that supervisors such as Defendants Coleman, Brown and Healey may not be held

---

[35]     (Dkt. No. 9, ¶ 3 [Plf.'s Am. Compl.].)

[36]     (*See*, *e.g.*, Dkt. No. 1, Caption & ¶¶ 3, 11 [Plf.'s Am. Compl.].)

[37]     (*Id.*)

liable under 42 U.S.C. § 1983 simply because of their positions as supervisors.[38]  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[39]  Here, Plaintiff has offered no factual allegations plausibly suggesting such personal involvement by Defendants Coleman, Brown and Healey in the inadequate-medical-care that Plaintiff allegedly received.[40]

For all of these reasons, I recommend that the Court issue an Order *sua sponte* dismissing the Eighth Amendment inadequate-medical-care claim asserted in Plaintiff's Amended Complaint.

### 3.     Failure to State a Procedural Due Process Claim Under the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component.  *Zinernon v. Burch*, 494 U.S. 113, 125 (1990).  The substantive component "bars certain arbitrary, wrongful government actions regardless of the

---

[38]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[39]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

[40]     (Dkt. No. 1, ¶ 3 [Plf.'s Am. Compl.].)

fairness of the procedures used to implement them." *Zinernon*, 494 U.S. at 125 [internal

quotations marks and citation omitted].  The procedural component bars "the deprivation by state

action of a constitutionally protected interest in life, liberty, or property . . . *without due process*

*of law*." *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original].

One of the differences between the two claims is that a substantive due process violation "is

complete when the wrongful action is taken," while a procedural due process violation "is not

complete unless and until the State fails to provide due process" (which may occur *after* the

wrongful action in question).  *Id*.  Here, I do not liberally construe Plaintiff's Amended

Complaint as attempting to assert anything other than a procedural due process claim under the

Fourteenth Amendment.  (*See* Dkt. No. 9, ¶¶ 2, 4-6, 8, 10, 22 [Plf.'s Am. Compl.].).

"[Courts] examine procedural due process questions in two steps: the first asks whether

there exists a [protected] liberty or property interest which has been interfered with by the State

. . . ; the second examines whether the procedures attendant upon that deprivation were

constitutionally sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460

(1989).  With regard to the first question (i.e., whether the plaintiff enjoyed a protected liberty

interest), the Supreme Court has held that liberty interests protected by the Fourteenth

Amendment's Due Process Clause "will generally be limited to freedom from restraint which . . .

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life." *Sandlin v. Connor*, 515 U.S. 472, 483-484 (1995).

Here, Plaintiff alleges that the result of the improperly conducted disciplinary hearing was

a *sentence* of forty-four (44) days of keep-lock confinement (and a commensurate loss of

privileges)–only thirty (30) days of which was *served*.[41]  Moreover, conspicuously missing from

Plaintiff's detailed Amended Complaint are any allegations that, while in keep-lock confinement,

he was denied food, clothing, bedding, heat, running water, showers, toiletries, medicine,

visitors, books, an opportunity to exercise, etc.  (*See generally* Dkt. No. 9 [Plf.'s Am. Compl.].)

In other words, it appears that the conditions of his keep-lock confinement were the ordinary

conditions of keep-lock confinement in New York State correctional facilities.  Under the

circumstances, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed,

during the disciplinary hearing, a liberty interest that was protected by the Fourteenth

Amendment.[42]

---

[41]        (Dkt. No. 9, ¶¶ 4, 6 [Plf.'s Am. Compl., alleging that Plaintiff was originally
*sentenced* to forty-four days of keeplock confinement and loss of privileges, but that the sentence
was "quickly modified," upon his transfer to Clinton C.F., to a sentence of thirty days of keeplock
confinement and loss of privileges]; *see also id.* [incorporating by reference "Appendix I" and
"Appendix K" from Plaintiff's prior Article 78 proceeding, which show that Plaintiff's forty-four
day sentence was modified to thirty days on December 28, 2005, *see* Dkt. No. 1, at 83, 85,
attaching "Appendix I" and "Appendix K"].)

[42]        I note that numerous district courts in this Circuit have issued well-reasoned
decisions finding no atypical and significant hardship experienced by inmates who served
sentences in Special Housing Units (the conditions in which are ordinarily more restrictive than
are the conditions in keep-lock confinement) of far more than thirty (30) days, even where the
conditions of confinement in the Special Housing Units were, to varying degrees, more
restrictive than those in the prison's general population.  *See, e.g., Spence v. Senkowski,* 91-CV-
0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr. 17, 1998) (McCurn, J.) (180 days that plaintiff
spent in S.H.U., where he was subjected to numerous conditions of confinement that were more
restrictive than those in general population, did not constitute atypical and significant hardship in
relation to ordinary incidents of prison life); *accord, Husbands v. McClellan*, 990 F. Supp. 214,
217-19 (W.D.N.Y. 1998) (180 days in S.H.U. under numerous conditions of confinement that
were more restrictive than those in general population); *Warren v. Irvin*, 985 F. Supp. 350, 353-
56 (W.D.N.Y. 1997) (161 days in S.H.U. under numerous conditions of confinement that were
more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL
137448, at *4-6 (S.D.N.Y. 1997) (192 days in S.H.U. under numerous conditions of confinement
that were more restrictive than those in general population); *Horne v. Coughlin*, 949 F. Supp.
112, 116-17 (N.D.N.Y. 1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of

With regard to Plaintiff's allegations of being issued a false misbehavior report, I note that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."[43]  In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."[44] The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been additional adverse action such as "retaliation against the prisoner for exercising a constitutional right."[45]  Here, Plaintiff does not allege facts plausibly suggesting such retaliation.  (*See generally* Dkt. No. 9 [Plf.'s Am. Compl.].)

Finally, with regard to Plaintiff's allegation of being wrongfully transferred to another correctional facility, I note that a prisoner has no due process right to not be transferred to another prison.[46]  Granted, a prisoner has a First Amendment right to not be transferred in

---

confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero*, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

[43]      *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]); *accord*, *Pittman v. Forte*, 01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.).

[44]      *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).

[45]      *Boddie*, 105 F.3d at 862; *accord*, *Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

[46]      *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976) ("The initial inquiry is whether the transfer of respondents from Norfolk [Correctional Institution] to Walpole [Correctional Institution] and Bridgewater [Correctional Institution] infringed or implicated a 'liberty' interest of respondents within the meaning of the Due Process Clause.  Contrary to the Court of Appeals, we hold that it did not."), *accord*, *Montayne v. Haymes*, 427 U.S. 236, 241-242 & n.4 (1976) (reversing Second Circuit decision cited by Plaintiff on page 12 of his memorandum of law);

21

retaliation for exercising a constitutional right.[47]  However, again, here, Plaintiff has not alleged

facts plausibly suggesting any such retaliation.  (*See generally* Dkt. No. 9 [Plf.'s Am. Compl.].)

 For all of these reasons, I recommend that the Court issue an Order *sua sponte* dismissing

Plaintiff's Fourteenth Amendment procedural due process claim.

###  4. Equal Protection Claim Under the Fourteenth Amendment

 To state a claim for a violation of the Equal Protection Clause, a plaintiff must allege

facts plausibly suggesting that he was intentionally treated differently from others similarly

situated as a result of intentional or purposeful discrimination directed at an identifiable or

suspect class.  *Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at

*11 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted*, 96-CV-0759, Decision and Order

(N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).  Where the alleged classification involves a

"suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny

by a court.  *Travis*, 1998 U.S. Dist. LEXIS 23417, at *11.[48]  In other circumstances, the alleged

---

*Meriwether v. Coughlin*, 879 F.2d 1037, 1047 (2d Cir.1989) ("It is well established that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause."), *accord, Burke v. McCoy*, 96-CV-0984, 1997 WL 610650, at *5 (N.D.N.Y. Oct. 1, 1997) (Pooler, J.); *Kalwasinski v. Morse*, 96-CV-6475, 2005 WL 318817, at *1 (W.D.N.Y. Feb. 9, 2005); *Dunley v. Rodwell*, 01-CV-2007, 2004 WL 2106595, at *5 (D. Conn. Sept. 17, 2004); *Majid v. Malone*, 95-CV-2545, 1996 WL 134756, at *4 (S.D.N.Y. March 26, 1996); *see also Murphy v. Bradley*, 03-CV-714, 2004 U.S. Dist. LEXIS 1074, at *6-7 (D. Conn. Jan. 16, 2004) ("A prisoner has no constitutional right to be incarcerated in a particular institution; he may be transferred for any reason or for no reason at all"–even where conditions in one prison are "more disagreeable" or the prison has "more severe rules.").

[47] *Majid v. Malone*, 95-CV-2545, 1996 WL 134756, at *4 (S.D.N.Y. March 26, 1996) (reaching same conclusion); *see also, infra*, Part IV.C.4. (discussing elements of First Amendment retaliation claim).

[48] It should be noted that prisoners do not comprise a suspect or quasi-suspect class for Equal Protection purposes.  *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)

classification is subject to only "rational basis scrutiny." *Travis*, 1998 U.S. Dist. LEXIS 23417, at \*11-12.  To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest." *Id.*; *Holley*, 2007 U.S. Dist. LEXIS 64699, at \*23; *Coleman*, 363 F. Supp.2d at 902.

Here, Plaintiff has alleged that he was treated differently from others similarly situated because of his multiple sclerosis condition.  (Dkt. No. 9, ¶¶ 4, 5, 10, 22 [Plf.'s Am. Compl.)  Specifically, he alleges that he was treated differently from those not afflicted with multiple sclerosis in that he was (1) denied the ability to participate in prison programs, (2) transferred from Eastern C.F. to Clinton C.F. because he "could not walk fast enough or well enough to defendant's satisfaction," and (3) issued eleven misbehavior reports over a 15-month time span at Eastern C.F.  (Dkt. No. 9, ¶¶ 4, 5, 8, 10, 11, 22 [Plf.'s Am. Compl.].)  In addition, he alleges that, as a result of this disparate treatment, he suffered "ever[-]increasing amounts of pain and discomfort [due to his inability] to continue to [participate in prison] program[s], [and] work, and to basically function as [any] person with total motor coordination."  (*Id.* at ¶ 4.)

I have some trouble finding that Plaintiff has alleged facts plausibly suggesting that (1) his disciplinary conviction, transfer or 11 misbehavior reports were caused by his disability, or (2) that any of those three things caused him physical "pain and discomfort."[49]  However, given

---

("[N]either prisoners nor indigents are [members of a] suspect class . . . .") [citations omitted]; *Holley v. Carey*, 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, \*23 (E.D. Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Coleman v. Martin*, 363 F. Supp.2d 894, 902 (E.D. Mich. 2005) ("Prisoners are not members of a protected class . . . .") [citation omitted].

[49]     *See Brown v. Croce,* 967 F. Supp. 101, 104 (S.D.N.Y. 1997) (use of racial slurs and epithets accompanied by two slaps in face with no physical injury did not amount to constitutional violation, as a matter of law) [citations omitted].  I note that numerous courts have

the special solicitude normally afforded to *pro se* civil rights plaintiffs such as Plaintiff, I am

unable to make such a finding *sua sponte* (i.e., without the benefit of briefing by Defendants on a

motion to dismiss for failure to state a claim).

    For these reasons, I recommend that the Court *not*, at this time, issue an Order *sua sponte*

---

held–correctly, I believe–that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not "physical injuries" for purposes of the Prison Litigation Reform Act of 1995 ("PLRA").  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Todd v. Graves*, 217 F. Supp.2d 958, 961-62 (S.D. Iowa 2002) (applying 42 U.S.C. § 1997e[e] to prisoner's Equal Protection claim under Fourteenth Amendment).  *See, e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia*, 06-CV-0049, 2007 WL 2684985, at *3 (M.D. Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter*, 01-CV-20957, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.*, 05-CV-1142, 2006 WL 3408176, at *4 (M.D. Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams*, 03-CV-0192, 2005 WL 5993338, at *4 (N.D. Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder*, 245 F. Supp.2d 200, 203, 205 (D. Me. 2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves*, 217 F. Supp.2d 958, 960 (S.D. Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia*, 112 F. Supp.2d 559, 566 (W.D. Va. 2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson*, 67 F. Supp.2d 499, 508 (E.D. Pa. 1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virgina*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D. Ill. March 31, 1997) (severe headaches caused by emotional distress  not "physical injury" for purposes of PLRA).

dismissing Plaintiff's Fourteenth Amendment equal protection claim.  I emphasize that this recommendation in no way implies that Plaintiff's Fourteenth Amendment equal protection claim is, in fact, viable under Fed. R. Civ. P. 8, 10, and 12.

     **5.**     **Discrimination Claim Under the Americans with Disabilities Act**

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq*. ("ADA") applies to inmates in state prison.  *See Georgia v. Goodman*, 546 U.S. 151, 153-60 (2006) (reversing decision that paraplegic prisoner had not stated claim under Title II of the ADA).[50]

In order to state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege facts plausibly suggesting the existence of three elements: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (3) such exclusion, denial or discrimination was by reason of his disability.  *Goonewardena v. New York*, 475 F. Supp.2d 310, 324 (S.D.N.Y. 2007).

Here, I have some trouble finding that Plaintiff has alleged facts plausibly suggesting that he was excluded from the unidentified prison program to which he refers *because* of his disability (as opposed to being so excluded because of his disciplinary conviction).  (Dkt. No. 9, ¶¶ 4, 8, 11, 12 [Plf.'s Am. Compl.].)  I also have some trouble finding that Plaintiff has alleged facts plausibly suggesting that he was transferred from Eastern C.F. to Clinton C.F. *because* of

---

[50]    *See also Armstrong v. Wilson*, 124 F.3d 1019, 1022-23 (9th Cir. 1997); *Yeskey v. Pennsylvania*, 118 F.3d 168, 172-74 (3d Cir. 1997); *Crawford v. Indiana*, 115 F.3d 481, 486 (7th Cir. 1997); *Candelaria v. Grefinger*, 96-CV-0017, 1998 WL 187383, at *3 (Apr. 15, 1998) (Pooler, J.); *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1036-37 (S.D.N.Y. 1995).

his disability (as opposed to being transferred for some other reason such as exceeding what Plaintiff calls the "60 day keeplock within one year rule").   (Dkt. No. 9, ¶¶ 2, 5, 10 [Plf.'s Am. Compl.].)  Finally, I have some trouble finding that Plaintiff was issued 11 misbehavior reports by Defendants at Eastern C.F. within a 15 month period *because* of his disability (as opposed to being issued those reports because of rule violations).  (Dkt. No. 9, ¶ 22 [Plf.'s Am. Compl.].) However, again, given the special solicitude normally afforded to *pro se* civil rights plaintiffs such as Plaintiff, I am unable to so find *sua sponte* (i.e., without the benefit of briefing by Defendants on a motion to dismiss for failure to state a claim).

For these reasons, I recommend that the Court *not*, at this time, issue an Order *sua sponte* dismissing Plaintiff's ADA claim.  I emphasize that this recommendation in no way implies that Plaintiff's ADA claim is, in fact, viable under Fed. R. Civ. P. 8, 10, and 12.

**6.    Denial of Opportunity to Amend Allegations During Appeal from this Report-Recommendation**

I anticipate that, during his likely objections to this Report-Recommendation, Plaintiff will assert additional allegations, in an attempt to effectively amend the allegations of his Amended Complaint.  I respectfully recommend that the Court, in exercising its discretion on the matter, decline to permit him to so amend his Amended Complaint.

As an initial matter, the special leniency normally afforded *pro se* civil rights litigants in no way requires the Court to grant a plaintiff an opportunity to amend his pleading when he has *already* been given a chance to amend his pleading (i.e., through the filing of an Amended Complaint).[51]  Rather, the decision of whether or not to accept such a proposed amendment rests

---

[51]    *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-

in the sound discretion of the district court.  *See Hynes v. Squillance*, 143 F.3d 653, 656 (2d Cir. 1998) ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and we have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review.") (affirming decision by Scullin, J., of the Northern District of New York) [citations omitted].

Here, Plaintiff has already had the benefit of (1) my Report-Recommendation of July 10, 2008, detailing the deficiencies in his original Complaint, and (2) a full and fair opportunity to correct those deficiencies through the filing of an Amended Complaint.  Permitting him to assert self-serving allegations at the last minute, during an appeal from this Report-Recommendation, would undermine the "[c]onsiderations of efficiency and fairness [that] militate in favor of a full . . . submission for the Magistrate Judge's consideration." *Hynes*, 143 F.3d at 656.

For these reasons, I recommend that the Court, in exercising its discretion on the issue, deny any request by Plaintiff to amend the allegations of his Amended Complaint, during any objections to this Report-Recommendation.

---

1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

### III.    PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the court in ruling upon such a motion.  Among these factors are:

> The indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross examination
> will be the major proof presented to the fact finder, the indigent's
> ability to present the case, the complexity of the legal issues and
> any special reason in that case why appointment of counsel would
> be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 [2d Cir. 1986]).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

Here, a review of the file reveals that (1) the case does not present particularly novel or complex issues and (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action.  While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel."  *Velasquez*, 899 F. Supp. at 974.  Furthermore, it is highly probable that this Court will appoint trial counsel at the final pretrial conference.  Finally, this Court is unaware of any special reasons why appointment of counsel at this time would be more

likely to lead to a just determination of this litigation.[52]

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's second motion to proceed *in forma pauperis* (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for the appointment of counsel (Dkt. No. 12) is

**DENIED** without prejudice; and it is further

**RECOMMENDED** that the Court issue an Order *sua sponte* **DISMISSING** the

following three claims asserted in Plaintiff's Amended Complaint (Dkt. No. 9), pursuant to 28

U.S.C. §§ 1915(e)(2)(B)(ii), 1915A: (1) his claim for inadequate prison conditions under the

Eighth Amendment; (2) his claim for inadequate medical care under the Eighth Amendment; and

(3) his procedural due process claim under the Fourteenth Amendment; and it is further

**RECOMMENDED** that the Court *not*, at this time, *sua sponte* dismiss Plaintiff's equal

protection claim under the Fourteenth Amendment, or his claim under the Americans with

Disabilities Act; and it is further

**RECOMMENDED** that the Court, in exercising its discretion on the issue, deny any

request by Plaintiff to effectively amend the allegations of his Amended Complaint, during any

---

[52]     To assist pro se litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's *Pro Se* Manual and Local Rules of Practice.  Plaintiff was mailed a copy of the Pro Se Manual on January 4, 2006.  If Plaintiff would like an additional copy of the Pro Se Manual or Local Rules of Practice, he may obtain them from the Clerk upon request.  While the Pro Se Manual is **free**, the Local Rules cost **$3.60**.  Pursuant to Local Rule 5.4, a pro se litigant must pay this amount even if he has been granted permission to proceed with his action *in forma pauperis*. The pro se litigant must make this payment **in advance**, with the check made payable to "Clerk, U.S. District Court."

objections to this Report-Recommendation; and it is further

     **ORDERED** that, in the event that this Report-Recommendation is adopted by District Judge Sharpe, the Clerk's Office shall, within **FOURTEEN (14) DAYS** after the issuance of that Order of adoption, do the following: (1) issue summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the named Defendants; (2) forward a copy of the summons and Amended Complaint by mail to the Office of the Attorney General for the State of New York, together with a copy of this Order and Report-Recommendation; (3) provide the Superintendent of Plaintiff's correctional facility, designated by Plaintiff as his current location, with a copy of Plaintiff's authorization form and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and (4) provide a copy of Plaintiff's authorization form to the Financial Deputy of the Clerk's Office; and it is further

     **ORDERED** that Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action, and Plaintiff must, upon penalty of dismissal, promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address.

     **BE ADVISED that any objections to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y.L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

     **BE ALSO ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been,**

30

but were not, presented to the Magistrate Judge in the first instance.[53]

BE ALSO ADVISED that the failure to file timely objections to this Report-

Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of

judgment that will be entered. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

*v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: August 11, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

     [53]    *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18, n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].